# ATTACHMENT 1

FILED/REC'D

2025 MAY -1 A 11: 24

# COMPLAINT FORM

CLERK OF COURT
U.S. DISTRICT COURT
WD OF WI

**(for filers who are prisoners without lawyers)**

## IN THE UNITED STATES DISTRICT COURT

FOR THE __Western__ DISTRICT OF __Wisconsin__

---

(Full name of plaintiff(s))

Elijah Cole Misener

_____

_____

vs

(Full name of defendant(s))

City of Madison [indemnified];

Gary Pihlaja, in his official

capacity; Sara A Bailey, in

her Individual and Official Capacity

Case Number:

**25-cv-329-wmc**

(to be supplied by clerk of court)

A.    PARTIES

1.    Plaintiff is a citizen of __Wisconsin__, and is located at
        (State)

__115 W Doty St, Madison WI 53703__
                (Address of prison or jail)

(If more than one plaintiff is filing, use another piece of paper).

2.     Defendant _Sara A Bailey and Gary Pihlaja_
(Name)

is (if a person or private corporation) a citizen of _Wisconsin_
(State, if known)

and (if a person) resides at _211 S Carroll St   Madison WI 53703_
(Address, if known)

and (if the defendant harmed you while doing the defendant's job)

worked for _City of Madison_
(Employer's name and address, if known)

(If you need to list more defendants, use another piece of paper.)

B.     STATEMENT OF CLAIM

On the space provided on the following pages, tell:
1.     Who violated your rights;
2.     What each defendant did;
3.     When they did it;
4.     Where it happened; and
5.     Why they did it, if you know.

_Please see attached narrative._

_____

_____

_____

_____

_____

_____

_____

_____

_____

C.     JURISDICTION

    ☒    I am suing for a violation of federal law under 28 U.S.C. § 1331.
                           OR

    ☐    I am suing under state law. The state citizenship of the plaintiff(s) is (are) different from the state citizenship of every defendant, and the amount of money at stake in this case (not counting interest and costs) is $_____.

D.     RELIEF WANTED

Describe what you want the court to do if you win your lawsuit.  Examples may include an award of money or an order telling defendants to do something or stop doing something.

See attachment.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

E.     JURY DEMAND

☒     Jury Demand - I want a jury to hear my case
                    OR

☐     Court Trial – I want a judge to hear my case

Dated this __14__ day of __April__ 20 _25_.

Respectfully Submitted,

_Elu/MMn_

Signature of Plaintiff

_#676876_
Plaintiff's Prisoner ID Number

_115 W Doty St_

_Madison WI 53703_
(Mailing Address of Plaintiff)

(If more than one plaintiff, use another piece of paper).

## REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE FILING FEE

☒     I **DO** request that I be allowed to file this complaint without paying the filing fee. I have completed a request to proceed in the district court without prepaying the fee and attached it to the complaint.

☐     I **DO NOT** request that I be allowed to file this complaint without prepaying the filing fee under 28 U.S.C. § 1915, and I have included the full filing fee with this complaint.

Attachment One (Complaint) – 5

Misener v City of Madison                                                pg 1

I. Jurisdiction

Venue is City of Madison, County of Dane, in this United
States of Wisconsin. The information and claims brought
within constitute a federal 1983 petition to the
Western Wisconsin Federal District Court.

II. Plaintiff

Plaintiff is Elijah Cole Misener, filing pro se from Dane
County Jail in Madison, Wisconsin. Misener is a 36 year
old man (born 1988) who is a US citizen

III. Defendents

Defendents are indemnified as City of Madison for notation
purposes. Defendent is Gary Pihlaja, in his official capacity
and Sara A Bailey, in her official and individual capacity.

IV. Facts

A. Venue

The following narrative occurred predominantly at the
following addresses within Dane County:

1.) 211 S Carroll St, Madison WI 53703 (MPD Central Station)
2.) 834 Jupiter Dr #306, Madison WI 53718 (Misener's residence)
3.) 439 Milky Way, Madison WI 53718 (North Star Park)
4.) W9564 Gusta Ln, Cambridge WI 53523 (former Shared residence
of Misener and Bailey, 2018-2023)

Misener v City of Madison                                          Pg 2

5.) 210 East Cottage Grove Rd, Cottage Grove, WI 53527 (Bailey's residence

B. Petitioner's Past Employment With MPD

Misener applied to the Madison Police Department (MPD) in 2012. He was hired as a police officer on October 14, 2013.

Misener completed the MPD pre-service academy in March 2014. He completed the standard five phases of field training between March and June 2014. Misener was advanced to solo patrol in June 2014.

Misener spent his entire law enforcement career at the rank of Police Officer. During that time, he was assigned to the 3-11p shift or 8p-4a shift, in the Central, West, Midtown, South and East districts in the City of Madison. During the course of his MPD career, Misener was a 6 year mental health liasion, certified in ABIDE, a certified intoxameter operator, a member of the Officer Advisory Committee (OAC) to Chief Koval's office, a Field Training Officer (FTO), member of the MPD staffing plan subcommittee; and received supplemental range and classroom firearms training. While at MPD, Misener had few to none formal discipline, major complaints or documented issues until the final year of service. All of those issues were internally generated, with strong ties to struggles with alcoholism, PTSD and a career ending physical injury.

<u>Misener v City of Madison</u>                                                      pg. 3

Misener resigned from the MPD in May 2021, for physical and mental health reasons related to PTSD, alcoholism and a debilitating and disabling leg injury Sustained in an off-duty accident.

C. Petitioner's Family History in Law Enforcement

Petitioner's father is Matthew D Misener (b. 1955). Matthew was a US Army military police officer (honorably discharged). He is a 29 year Veteran of the Madison Police Department, holding ranks of Police Officer (undercover, Criminal Intelligence Unit) and Detective from 1982 to 2010. He was assigned to the North, South and West precincts.

Matthew is currently employed by ATD Ltd. NM, performing top level security Clearance background Checks for the US Federal government.

D. ~~Petitioner~~ Plaintiff's Relationship to Defendent Bailey

Plaintiff and Defendent Bailey were hired by MPD on October 14, 2013, as police officers. They attended the 2013-2014 pre-service academy together (Section B), Under (then) Sgt. Koval.

Bailey and Misener served with MPD from 2013-2021 together. They were assigned to the rank of Police Officer from 2013-2018. In 2018, Bailey was promoted to the rank of Investigator within MPD. From 2015-2021, Misener and Bailey were Victim and Witness in a Conspiracy to commit 1st Degree Intentional Homicide case out of Dane County. The appeal reached the W.WI District Court Under Watkins v. State (WI), 2021. Misener was the victim

Misener v City of Madison                                          pg. 4

In this case, Bailey was a witness. Their personal and off-duty relationship was intentionally withheld by the Dane County District Attorney and State of WI in appeals. Misener and Bailey became romantically and socially involved in a dating relationship in January 2014. They became engaged in February 2016 and legally married on July 8, 2017 in Dane County, WI. Bailey and Misener lived together in Madison, WI between March 2015 through March 2018. They resided together in a shared home in Jefferson County (Town of Oakland) from March 2018 to May 2023. Misener and Bailey legally divorced, uncontested and undisputed in October 2023 in Jefferson County.

Misener and Bailey maintained a close friendship following the divorce, speaking on the phone one to two times daily (around 1-2 hours/day). The lived seperately but an 8 minute drive apart. They continued spending time together in person weekly and pet-sitting for each other. This nature of the relationship remained consistent from October 2023 to July 8, 2024.

F. Plaintiff's Relationship to Defendent Pihlaja.

Defendent Gary Pihlaja was employed as a police officer, largely assigned to the east district station of MPD during Bailey's patrol services tenure, prior to her promotion. This made him a direct co-worker and peer to Bailey

Pihlaja and Misener were assigned to patrol services together

Misener v City of Madison                                                                                         pg 5

however their assignments were logistically and geographically opposite.

Pihlaja has some personal ties to the incident. He is a close family member to MPD investigator Stephanie Perez (Wade). Perez was an academy 2013 classmate of both Misener and Bailey. From 2013-2016, Perez resided in the same apartment building as Misener and Bailey, at 834 Jupiter Dr, Madison, WI 53718. Perez was assigned to patrol services in the east district, night shift, with Bailey. They lived and worked so closely, they referred to each other as "work wives".

Misener had social contact with Pihlaja off-duty, as a result of these connections. As Bailey was routinely invited to social functions and weddings with Perez, Misener was also present at several joint events. This included at least two wedding celebrations between 2018-2020, in which Pihlaja and Misener were in attendance. They were in contact socially and generally intoxicated together by conclusion of events.

Misener had next contact with Pihlaja in July 2024, when Pihlaja was assigned his open cases related to events between July and November 2024. Plaintiff and Defendent Pihlaja had no contact between Misener's 2021 resignation and the beginning of these criminal cases. Conversely, defendent Bailey found herself in closer proximity to Perez,

Misener v City of Madison                                          pg. 6

as Perez was promoted to Bailey's 13 person unit around 2021. This involved them working in the City County Building (CCB) as well as a shared Forensic Services Unit (FSU) office. This caused increased social contact between Pinlaja, Perez and Bailey; which was relayed to Misener in routine phone communication from Bailey.

F. Law Enforcement Status of Defendents

Defendent Bailey is a certified, sworn law enforcement officer in the state of Wisconsin. She is deputized within Dane County by prior Sheriff Dave Mahoney as of 2013. Bailey holds rank of Investigator within MPD. In the Commission of her official duties, she wears a badge, full police uniform and operates a fully marked MPD FSU vehicle with light package and siren.

Bailey is an active member of the Madison Professional Police Officer's Association (MPPOA) and Wisconsin Professional Police Association (WPPA). She is under contract with the City of Madison government, with the City's Police Department. At time of incident, Chief of Police was Chief Shon Barnes. Bailey's immediate supervisor was Sgt. Blake Hoefts.

Pinlaja holds the rank of Detective within MPD. In commission of his official duties, he wears a badge on a small chain around his neck, carriers MPD Identification credentials and operates an assigned unmarked department vehicle with light package and siren.

Misener v City of Madison                                                    pg7

Pihlaja is an active member of the MPPOA and WPPA. He
is under contract with the City of Madison government with
the city's Police Department. At time of incident, Chief of
Police was Chief Shon Barnes. Supervisors ~~Were~~ were Captain
Edward Marshall and Lt Jamar Gary.

G. Petitioner's AODA Background Information

Misener has a clinical diagnosis of Alcohol Use Disorder (AUD)
as of 2020 and Substance Use Disorder (SUD) as of 2024,
through Group Health Cooperative of South Central Wisconsin
(GHC-SCW). Misener has been a moderate to severely heavy
drinker, daily, from initiation of pertinent events in
background from 2013, until February 2023.

The Severity of Misener's AUD culminated in total physical
dependency on alcohol by 2020. Between first hospitalization for
alcohol withdrawal (11/9/2020) and February 2023, Misener underwent
around 50 hospitalizations related to severe physical
dependence on alcohol with complex withdrawal. Symptoms
included (but not limited to) life threatening seizures,
delerium tremens, convulsions, dehydration, pancreatitis,
gastrointestinal dysfunction, electrolite imbalances and related
mental health concerns. Blood Alcohol Content results were
routinely .3-.5.

Misener entered Alcoholics Anonymous (AA) in February 2023 and
immediately became very publicly active in sobriety and the
recovery community at that time. He achieved continuous

Misener v City of Madison                                               Pg 8

Sobriety until November 2023 relapse.

Misener began replacing alcohol with narcotic stimulants
(cocaine and amphetamines) in December 2023.

H. Plaintiff's Mental Health History and Chapter 51

Misener has struggled with depression and PTSD beginning
around age 13, first diagnosed at age 15 (2005). These
conditions went untreated during the majority of his life.
As alcoholism grew in severity, Misener entered a period
of persistant mental health crisis episodes. These
episodes resulted in persistant suicidal ideation, threats,
gestures, actions and attempts; all to varying degrees.
In August 2021, Misener was placed under a Wisconsin
Chapter 51 commitment order. The commitment order
remained in place until March 2024. Violations of an
absolute sobriety condition in the order in addition to
continued mental health crisis episodes lead to at least
seven seperate return orders to Winnebago Mental Health
Institute (WMHI) on the Chapter 51 commitment.
As of May 2024, Misener's mental health diagnosis were
depression, PTSD, gender dysphoria, ADHD, AUD and SUD. He
was prescribed lexapro, prozasin, Vyvanse, trazadone and antabuse.

I. Defendant Bailey's Knowledge of Misener's Chapter 51

Bailey was made aware of Misener's initial Chapter 51 commitment
order prior to Misener even beginning police transport to Willow
Creek-Green Bay in August 2021. Jefferson County Sheriff's Office

Misener v City of Madison                                      Pg 9

(JCSO) notified her of Misener's disposition via phone.

During the 14 days of official Confinement to Willow Creek
Mental Health Institute (WCMHI), Misener and Bailey Communicated
daily via Phone. Bailey picked up Misener from WCMHI upon
discharge. Upon discharge, Bailey was handed and read the Chapter
51 Commitment order in front of Misener and WCMHI staff.
Between 2021-2023, Misener was repeatedly hospitalized at WMHI.
During all visits, Bailey and Misener communicated via phone and
video one to four times daily. At least six times, Bailey picked
up Misener upon discharge from WMHI. This required presenting
valid photo identification to staff and signing discharge paperwork.
In routine communication November 2023 - July 2024, Misener
provided roughly weekly updates to Bailey on Chapter 51
status until it expired.

J. Defendent Bailey's knowledge of Plaintiff's AODA Activity
Plaintiff and Defendent Bailey began associating off-duty
in December 2023, with alcohol consumption being a
persistant focal point. Bailey and Misener knew each other
to be moderate to increasingly heavy drinkers, due to
their relationship and cohabitation revealing daily drinking habits.
Bailey was aware of Misener's mental health decline, suicidal
thoughts and actions and heavy (related) alcohol consumption
by at least March 2021. This is documented repeatedly in
Jefferson County and Rock County Sheriff Office reports, 2021-2023.
Bailey was further aware of Misener's AUD through knowledge

Misener v City of Madison                                              Pg 10

of his participation in recovery communities. From July 2023 through February 2024, Bailey and Misener attended group therapy within the same, daily recovery meetings.

In December 2023, Bailey placed a number of emergency calls to the Dane County Communication Center (911 center), reference Misener being intoxicated and suicidal. Misener was contacted and transported to Meriter Hospital Emergency room for an intentional overdose, by MPD and Madison Fire/EMS (MFD). The Chapter 51 status was discussed by MPD with Journey-Mental Health. Bailey was aware of this information, personally and professionally.

On approximately December 30, 2023, Bailey responded to the front entry way of 834 Jupiter Dr, Madison, WI, to check Misener's status. Bailey was on duty, wearing full MPD police uniform and drove to the residence in fully marked MPD FSU Suburban. No case number was generated, nor was the incident documented in a police report.

Upon Bailey's contact in the building's front entry way, she asked Misener what he "was on", due to appearance and behavior. Misener openly and immediately informed Bailey he was actively consuming large quantities of Cocaine. Bailey exited, however Plaintiff and Bailey continued communicating within 24 hours.

Between January 1-9, 2024, Misener left Wisconsin, but remained in daily phone, text and video contact with Bailey.

Misener v City of Madison                                          Pg 11

During those contacts, Misener Spoke openly to Bailey about
his access to and use of narcotic Stimulants (cocaine and
amphetamines); within the context of recovery.

Upon Misener returning to Madison, WI, he disclosed to
Bailey he was having difficulty Staying Sober from Stimulant
Use. As a result, he began participation in Narcotics
Anonymous on 1/14/2024. During January through February
2024, Misener openly informed Bailey of ongoing Struggles
with narcotic illicit Stimulant drugs.

In February 2024, mutual friend, Tara Doty (b.1993) informed
Bailey that She suspected Misener may be experiencing sex
trafficking as well as other drug related concerns that were
dangerous to Misener's Safety and well-being.

In March 2024, Bailey and Misener spoke on the phone
extensively between appoximately March 4-10, 2024, reference
Bailey's concerns over information from Doty. Misener
continued to be extremely open and honest with Bailey,
down to details including his associates, costs, travel,
frequent locations of interest and habits. These conversations
were held daily during routine calls; as well as roughly once
a week during routine in-person visits at Misener's Madison
residence as well as Bailey's Cottage Grove address.

Bailey was notified as late as approximately May 8, 2024, that
Misener was engaging in illicit narcotic Stimulant use.
During last known communication of the matter, Misener sent

Misener v City of Madison                                                pg 12

Bailey a Snapchat photo outside a Dodge County Sex shop,
indicating he had engaged in purchasing narcotic stimulant
drugs at that location. Within minutes of sending.

Bailey was additionally inside Misener's residence between
March to July 2024, generally to visit socially or care for
pets. As several visits by Bailey were unannounced, Misener
was not home while she was inside the residence. During
visits, there were obvious signs of drug activity and
visible drug paraphenalia inside the apartment.

Following the unexpected death of Doty's significant other
on June 27, 2024, Misener, Doty and Bailey had at least
7 video calls, late at night, between June 28 - July 7, 2024.
During these contacts, it was openly disclosed to Bailey
that Misener and Doty were consuming alcohol, marijuana,
cocaine and amphetamines. All three were heavily
impaired during contacts, which utilized Snapchat video
calling.

K. Defendant Bailey's Use of MPD's Resources in Criminal Conduct
During 2024, Bailey routinely provided Misener with information
on police activity as well as police records. These were related
to his drug activity, included background information on his
associates and included reports written about Misener. Bailey
provided information from vehicle plates associated with his
activity. Bailey also advised Misener of adversarial information
related to MPD internal politics and investigations. Bailey

Misener v City of Madison                                              Pg 13

Shared MPD activity by recording City camera and In-squad Video (Arbitrator) with her personal phone and sending it via Snapchat to Misener.

Based on Plaintiff's direct experience with MPD records, the systems accessed by Bailey to obtain these records were LERMS, NCIC/CIB/III (incidents, persons and global vehicles), Mobile CAD (desktop, Toughbook), Arbitrator In-squad video systems, City camera access (police), MPD internal "F Drive", photos from FSU special software, NIBIN and interdepartment network emails.

These records were released to Plaintiff verbally over the phone, verbally in person, viewed in person and transmitted over Snapchat, text message and What's App.

Misener did not submit any official records requests to Bailey that were outside of the official records request channels (i.e. the MPD public website). The production of records from Bailey to Misener was done (colloquially) "off the record".

L. Distribution of Firearms by Bailey

Around mid-May 2024, Misener and Bailey began communicating regarding three of Misener's registered firearms. While residing together in Cambridge, WI, Misener and Bailey acquired numerous firearms. As Misener's mental health and alcoholism deteriorated, the firearms were secured in several phases and means; chronologically.

In approximately August 2021, Misener turned over three firearms

Misener v City of Madison                                                    pg 14

to Bailey, voluntarily, for mental health reasons.

These consisted of a 1.) Glock Gen 17 (9mm) handgun, a 2.) AR-15

Bravo Munitions Company (BCM) rifle and a 3.) Glock Gen 43

(9mm) handgun. The first two of the named firearms were

purchased through MPD purchasing ("PD purchasing"). The third

firearm was purchased at Cabela's - Sun Prairie in 2015.

Bailey notified Misener that she had stored the firearms in

her MPD CCB women's locker room foot (shoe) locker for

safekeeping. They were never entered into any official

police property record, report or storage. To the knowledge

of Petitioner/Plaintiff, these firearms were stored permanently

in this location, in this manner, unchanged, from August 2021

through May 2024.

Around May 14, 2024, Misener notified Bailey of an opportunity to

sell firearms to a buyer in Columbus, Wisconsin. Misener requested

the firearms be returned, citing improved mental health,

abstention from alcohol and a believed legal status in ability

to possess firearms. Bailey did not contest any of this

information and agreed to return the firearms to Misener.

Misener and Bailey discussed the plan for about ten days over

Snapchat.

M. Firearms Transaction Between Plaintiff and Defendant Bailey

On date believed to be May 26, 2025 (from Plaintiff's memory),

Bailey communicated that she would return the firearms.

Misener informed Bailey that he was at North Star Dog

Misener v City of Madison                                          pg 15

Park with his dogs, indicating he was not available for exchange of firearms. Bailey informed Misener she "had a few drinks in" and was driving to MPD CCB to obtain the firearms. Bailey specifically informed Misener that she had consumed "2-3 Bloody Marys". Misener informed Bailey he would stay at the North Star Park. About 30-45 minutes after these messages, Bailey arrived at the North Star Dog Park and approached Misener, in an open field, with his dogs.

While at the park, Misener took several photos of Bailey with the dogs. He informed Bailey he was taking the dogs home to his residence. Bailey informed Misener she would follow him home in her own vehicle. Misener observed Bailey follow him to his residence on Jupiter Dr. in a blue Toyota Tacoma.

Bailey and Misener then pulled into the far west lot of the apartment property. Bailey removed a canvas bag with a cat and a wine bottle decal on it. The bag was off white with black handles. Bailey handed the bag to Misener, hugged Misener and then left in her vehicle. Upon taking the bag up to his residence, Misener opened the bag and observed the three firearms listed earlier in Section (M), unassembled ("field stripped") and unloaded. Misener placed the firearms on the floor and took a Snapchat photograph, which he sent to five active MPD employees. Misener

Misener v City of Madison                                          pg 16

then placed the firearms in a safe.

N. MPD Actions July-August 2024

On July 12, 2024, numerous MPD officers tactically gathered outside Misener's Jupiter Dr address, armed with a ballistic shield and AR-15 rifles for a "Welfare Check" on Misener. Misener spoke with Sgt Kurt Wege on the phone, with officers in the hallway outside his apartment at that time. Misener expressed to Sgt Wege he was concerned about receiving unethical treatment in DCJ due to transgender (referred to as "transexual" in Wege's report) status. Misener notified Sgt Wege he had department issued firearms at that time, to the level of specificity of including a photo of them. MPD officers left the scene without taking further action.

On July 13, 2024, a Search Warrant was executed on Misener's residence. As a result, the Glock 17 and AR-15 were seized and recorded as property/evidence by MPD. Although the Glock 43 was not concealed anywhere not searched by MPD, no record of it being seized was recorded by MPD.

One week following execution of Search Warrant, charges were filed against Misener for felony possession of a firearm following an expired Chapter 51 commitment, related to the firearms located in Misener's apartment. The charges filed under WI 941.29 (1)(em) specified charges were for the two firearms initially issued to Misener by MPD and then

Misener v City of Madison                                                    Pg 17

returned again to Misener by Defendant Bailey, in her official
duty as an MPD law enforcement officer. A second felony
charge was referred, charging Misener with verbal threats
to law enforcement; related largely to possessing firearms
given to him by MPD and notifying MPD Sgt. Wege of
such information; while MPD performed a "welfare
check" in which no contact was made with Misener
in person. The firearms located in execution of search
warrant were found unloaded and field stripped.

O. Statements to Defendant Pihlaja Reference Police Misconduct
Misener was told Pihlaja was the lead detective on his
case in late July 2024. Misener had made several attempts
to contact the Madison PD reference Bailey's criminal
involvement in the case. Attempts to report were ignored,
turned away or met with Misener being arrested. Misener
made repeat attempts to report at the East District Station,
over the phone and to outside agencies (WI DCI and DcSc)
between July 20-28, 2024.

Misener responded to the East District MPD Station on July
30, 2024, for what was believed to be a cooperative,
voluntary interview on the matter. Upon arrival, he was
met by 8-10 officers at gunpoint with ballistic shield and
AR-15 rifles, proned out on the cement in ~~custody and~~ surrender,
and placed in handcuffs before entering the building.

Upon contacting MPD personnel in handcuffs, Misener made

Misener v City of Madison                                            pg 18

Statements to Sgt J Conrad, Detective K Dougherty and PO A Truman, that he had received firearms illegally from MPD Investigator Bailey. Misener expressed concerns, primarily, that her employment would be terminated due to involvement in his case.

On August 1, 2024, Pihlaja responded to Dane County Jail (DCJ) to conduct an interview of Misener. During that interview, Misener disclosed to ~~Misener~~ Pihlaja that Bailey was the source of the firearms, as well as indicated there was additional nexus to criminal conduct. This interview was both video and audio recorded.

While incarcerated in DCJ August through September 2024, Misener submitted numerous written requests to Dane County Sheriff Office (DCSO) via the tablet, reporting that he received illegal firearms from Bailey; requesting the information be passed on to Pihlaja.

In a November 2024 firearms hearing, Misener again reported information to Dane County Circuit judge, implicating Bailey in participation in criminal firearms exchange and police misconduct.

P. MPD Omissions of Criminal Information

No mention of information provided by Misener on Bailey's involvement in firearms exchange or information and records sharing during related events were ever included in police reports submitted to the Dane County or Jefferson County

District Attorneys, where Misener had open cases.

Upon September 2024 release on bail, MPD requested a rare, special bail condition for Misener, that he "not Contact MPD". Misener spoke with Attorney Adam Welch to confirm this included any information related to Bailey being reported for felony distribution of firearms while on-duty. Dane County District Attorney cited MPD felt "afraid" necessitating the bail condition.

While in DCJ, Misener made written and verbal reports to DCSO Deputy Middleton on events between Bailey and Misener, as well as other involved MPD personnel. Misener cited in writing violation of WI 941.2905(1) by Bailey. When Pihlaja responded to DCJ on 11/15/2024 to interview Misener, Misener referenced the mishandling of the case with Bailey. Pihlaja responded in audio and video recorded interview, "that was before we had your other side to the story." Pihlaja concluded the interview, during which Misener disclosed being the victim of violent sexual assault, with, "this is what happens when you engage in high risk behavior".

While incarcerated in DCJ, Misener co-founded non-profit organization Transform Dane, in response to cruel and unusual conditions of confinement experienced at DCJ, as a result of his transgender status. Part of the work of the organization included submitting open records requests relevant to

<u>Misener v City of Madison</u>                                                    Pg 20

litigation. Transform Dane board members were repeatedly
denied access to all possibly relevant records on the case
by MPD records Clerk, Jaime Doyle.

Q. Case Information

Misener has been confined to DCJ since 11/14/2025 on
$45,000 bail. Cases related, criminally, are 24CF1754, 24CF1827
and 24CF2752.

V. Claims

A. ONE: Defendent Bailey violated Misener's 14th amendment
rights, under the Equal Protection Clause, by releasing
firearms to him in a manner contrary to law and
Standard MPD policy; placing him at high risk for adverse
mental health outcome.

B. TWO: Defendent Bailey violated Misener's 14th amendment
rights, under the Equal Protection Clause, by releasing firearms
to him in a manner contrary to law and Standard MPD
policy; placing him at high risk for adverse outcome while
knowing Misener was struggling to maintain court ordered
sobriety.

C. THREE: Defendent Bailey violated Misener's 14th amendment
rights, under the Equal Protection Clause, by releasing firearms
to him in a manner contrary to law and Standard MPD
policy; placing him in a involuntary illegal possession of
firearms

Misener v City of Madison                                                    pg 21

D. Four: Defendant Bailey violated Misener's 14th amendment rights, under the Equal Protection Clause, by releasing firearms to him in a manner contrary to law and standard MPD policy; engaging in "creative law enforcement activity" to "generate criminal conduct", constituting entrapment, as outlined in Sherman v United States, 356 US 369.

E. Five: Defendant Pihlaja violated Misener's 14th amendment rights, under the Equal Protection Clause, by neglecting to report substantial allegations of criminal police misconduct that bore huge relevence to charges he filed against Misener

F. Six: Defendant Pihlaja violated Misener's 14th amendment rights, under Equal Protection Clause, by retaining the role of lead Detective on a case where he had personal and familial ties to individuals engaging in official police misconduct.

G. Seven: Defendant Pihlaja violated Misener's 4th amendment rights by neglecting to disclose pertinent information regarding official police misconduct to the Dane County District Attorney's Office. This information, if known, would've had a high probability in changing the District Attorney's decisions to file charges, argue for high bail and offer a plea. This omission lead to a significant increase in incarcerated time for Misener, which he held liberty interest in avoiding.

WD OF WI
U.S. DISTRICT COURT
CLERK OF COURT
2025 APR 28 A II: 00
FILED/REC'D

VI. Prayer for Relief

Misener v City of Madison                                    Pg 22

Plaintiff seeks $2,000,000 in punitive damages, citing

massive physical and emotional damages. The transgender

status of Misener resulted in DCJ incarceration conditions

so contrary and afoul to acceptable practices that

there is Simultaneous federal 1983 suit being filed

related to Dane County municipal actions.

Plaintiff seeks injunction, prohibiting Pihlaja or Bailey from

investigating or participating legally in the cases listed in

Section (a).


VII. Signed for Verification




VIII. Additional Documents

A. Global Cover Sheets (x4), for uses organizational purposes

only, labeled 1.0-4.0

B. Envelope 1.0 Fee Waiver Affadavit (from JHL)

C. Envelope 4.0 Fee Waiver Affadavit (from website W.WI)

D. Records Request Appendix

E. Contact Information Addendum